UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ASHOK CHAUHAN,

                             Plaintiff,

-against-

MM HOTEL MANAGEMENT LLC, d/b/a
GARDEN CITY HOTEL, ANN BONNET,
individually and in her official capacity, and
ATEF HAGGAG, individually and in his
official capacity,

                             Defendants.
-------------------------------------------------------X

**MEMORANDUM AND ORDER**

18-CV-5963 (DRH)(SIL)

**APPEARANCES:**

**For Plaintiff:**
Derek Smith Law Group, PLLC
1835 Market Street, Suite 2950
Philadelphia, PA 19103
By:    Caroline H. Miller, Esq.
        Danilo Bandovic, Esq.

**For Defendants:**
Jackson Lewis P.C.
58 South Service Road, Suite 250
Melville, New York 11747
By:    Jeffrey M. Schlossberg, Esq.
        Ashley C. Zangara, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

      Plaintiff Ashok Chauhan ("Plaintiff") brought this action against Defendants MM Hotel

Management ("MM Hotel"), Ann Bonnet ("Bonnet"), and Atef Haggag ("Haggag")

(collectively, "Defendants") for declaratory and injunctive relief and for damages to redress

injuries suffered as a result of Defendants' alleged discrimination and retaliation pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"); Section 1981 of

the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); and the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"). Presently before the Court is Defendant's motion to dismiss pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons explained below, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

The following relevant facts come from the First Amended Complaint and are assumed true for purposes of the instant motion to dismiss:

### Plaintiff

Plaintiff is an "Asian and Indian" Hindu man who suffers from diabetes mellitus. (First. Am. Compl. [ECF No. 22][1] ("FAC") ¶ 10.) Since April 2000, Plaintiff has worked for Defendant MM Hotel as a banquet server at it its Garden City, New York location. (FAC ¶¶ 20-21.) Plaintiff's responsibilities include setup and breakdown of events and serving guests food and drink. (FAC ¶ 22.) Plaintiff's income relies heavily on the tips he receives at these events. (FAC ¶ 23.)

### Defendant Haggag

In 2003, Defendant MM Hotel hired Defendant Haggag as a Supervisor of banquet servers, making him Plaintiff's immediate supervisor. (FAC ¶¶ 26-27.) Defendant Haggag is a "Caucasian/Egyptian Muslim man." (FAC ¶ 28.) Plaintiff alleges that, "shortly after being

---

[1] Defendants appear to have filed with the declaration accompanying their Motion to Dismiss a copy of the Proposed Amended Complaint (ECF No. 22), rather than the one Plaintiff filed after this Court granted him leave to file his Amended Complaint (ECF No. 26); however, the documents appear to be identical. In an abundance of caution, the Court notes that its citations are to the version included with Defendants' motion, ECF No. 22.

hired," Defendant Haggag began to discriminate against him "on the basis of his disability, religion, race, and national origin." (FAC ¶ 29.)

Plaintiff alleges that "[t]hroughout his employment, Defendant Haggag continually discriminated against [him] by intentionally ignoring his religious practices, by making insulting comments about his Hindu religion, as well as offensive comments about Asian[s]/Indians." (FAC ¶ 36, 40.) For example, Defendant Haggag said:

- "What are these dirty animals doing here?" referring to Hindu gods represented by certain animals;

- "What is this?...The Fire Department will come!" referring to a Hindu religious ceremony involving fire;

- "Why are these white people wearing these Indian dresses. They are like the Jews making people follow them";

- "Indians are bullies"; and

- "They are killing Pakistanis" referring to Indians allegedly killing Pakistanis. (FAC ¶ 41.)[2]

Plaintiff "routinely" heard comments such as the ones listed above throughout his employment, which were "especially common during Hindu religious events or events that included a large Indian population." (FAC ¶ 42.)

In addition to making comments directed at Hindus or Indians, Plaintiff alleges that Defendant Haggag denied his leave requests. In or around October 2003, Plaintiff asked Defendant Haggag if he could take three days off to participate in religious funeral rituals, to which Defendant Haggag responded "Can you postpone the date?" (FAC ¶ 35.) On or about

---

[2] Plaintiff does not indicate the dates on which Defendant Haggag made these statements.

April 15, 2015, Plaintiff informed Defendant Haggag that he could not work an event the next day because his mother-in-law was in hospice. (FAC ¶ 37.) It is unclear what, if any, action Defendant Haggag took in response, however he allegedly "continued to deny [Plaintiff's] leave time when requested" but would "routinely grant Muslim and Pakistani banquet servers the leave time they requested." (FAC ¶ 43.)

On another occasion in October 2017, Plaintiff asked a different supervisor, Sonny Bishop, "if he could leave work early to care for his sick son." (FAC ¶ 49.) When Plaintiff returned to work, Defendant Haggag "humiliated" Plaintiff by telling his co-workers that he "left early to protest someone else receiving a promotion over him." (FAC ¶ 50.) That same month, on October 7, 2017, "Defendant Haggag denied [Plaintiff's] request for three days off to celebrate his son's birthday." (FAC ¶ 51.) On one of the days Plaintiff had requested off, October 17, 2017, Defendant Haggag sent Plaintiff home because there was no assignment for him. (FAC ¶¶ 51-53.)

Though Plaintiff does not provide any specific details of when or under what circumstances, Plaintiff alleges that Defendant Haggag "show[ed] preference in lucrative job assignments to banquet servers that were Muslim or from Pakistan" and would "make offensive comments about Indians or the Hindu religion." (FAC ¶¶ 30, 44.) Plaintiff notes that "Defendant Haggag's discriminatory animus was especially pointed because nationality and religious differences between Hindus from India and neighboring Pakistani Muslims—is a source of well documented and ongoing conflict." (FAC ¶ 31.) He also alleges that Defendant Haggag "never issued [him] a raise in his 17 years of working with Defendants." (FAC ¶ 45.)

<u>Incident Surrounding Plaintiff's Religious Practice</u>

On or around March 13, 2018, Defendant Bonnet asked Plaintiff "'Can you trim your hair?'" referring to Plaintiff's sideburns, and asked him if Defendant Haggag requested that he trim his hair. (FAC ¶ 78-80.) Plaintiff "was clean-shaven—with no long mustache or beard—and kept his hair in a neat and hygienic men's fashion," however Plaintiff "does not trim his hair because of his deceased parents and he must continue to perform rituals showing symbolic offerings and gratitude to his parents." (FAC ¶¶ 81, 85.) Plaintiff responded to Defendant Bonnet "'No. It is a matter of religion.'" (FAC ¶ 83.) Defendant Bonnet responded "'Thank you,' and left [Plaintiff] to continue working." (FAC ¶ 84.) Later that day, Defendant Bonnet "became frustrated and kept repeating, 'I want you to trim your hair.'" (FAC ¶ 86.) Plaintiff "continued to refuse on grounds of his religious beliefs." (FAC ¶ 87.) At the end of the day, Defendants Bonnet and Haggag told Plaintiff "to not come back to work unless he trimmed his hair." (FAC ¶ 88.)

On or around March 26, 2018, Plaintiff emailed Defendant Bonnet a written complaint about how Defendants Bonnet and Haggag "threatened to refuse to schedule him for work unless he trimmed his hair." (FAC ¶¶ 89-90.) In his email, Plaintiff explained that trimming his hair was against his religious beliefs. (FAC ¶ 90.) Four days later, on March 30, 2018, Defendant Bonnet "informed [Plaintiff] not to return to work unless he brought a note from a priest about his religious practices." (FAC ¶ 91.) On or around April 4, 2018, Plaintiff provided Defendant Bonnet with a letter from his priest, Krishna Dixit, stating in part, "'True Hinduism beliefs. Man and women can grow Hairs Facial and Head for some time for the Purpose of Material Sacrifice to Lord Vishnu according to the promise (Mannat) made by the person.'" (FAC ¶¶ 92-93.)

<u>Plaintiff's Complaints about Defendants' Behavior</u>

Though unclear when, Plaintiff complained about Defendant Haggag's behavior to Defendant Bonnet, "Defendant's Director of Human Resources". (FAC ¶¶ 38, 56.) Plaintiff also alleges that he "routine[ly]" complained to Defendant Haggag and "Defendant's Human Resources" about "the discriminatory comments and preferential treatment afforded to Muslim and Pakistani banquet servers." (FAC ¶ 46.) Additionally, Plaintiff routinely complained to "Defendant's Human Resources about the fact that he was not given a raise and other non-Hindu and non-Indian banquet servers were given increases." (FAC ¶ 47.) "Defendant Haggag and Defendant's Human Resources ignored [Plaintiff's] complaints." (FAC ¶ 48.)

On or about March 22, 2017, Plaintiff "filed an initial Charge with the Equal Employment Opportunity Commission ('EEOC'), alleging that Defendants…[including] Defendant Haggag had discriminated against him on the basis of his religion, race, national origin, disability, together with a hostile work environment and retaliation." [3] (FAC ¶¶ 5, 55.) Plaintiff submitted an amended charge with the EEOC on April 9, 2018, and received a Right to Sue Letter from the EEOC on April 20, 2018. (FAC ¶¶ 6, 7.)

On October 30, 2017, Chauhan emailed Defendant Bonnet "stating that although he complained about Defendant Haggag's discrimination against him since 2015, nothing had been done and the discrimination had escalated continuously throughout his employment." (FAC ¶ 56.) He further stated that "because Defendant Haggag always denies his requests for family and

---

[3] With respect to Defendants' allegations that Plaintiff's claims are time-barred, the Court notes that the exact date that Plaintiff filed his charge with the EEOC is unclear given that later in the First Amended Complaint, Plaintiff alleges that "[o]n or about October 30, 2017, [Plaintiff] filed an initial Charge with the [EEOC]." The issue is further complicated by the fact that Defendants allege that Plaintiff filed his initial charge on November 13, 2017. (Defs. Mem. In Supp. [ECF No. 33] at 9). In the spirit of assuming all allegations in Plaintiff's favor, the Court will use the earlier date for the purposes of this decision.

medical leave, he neglected to even ask for Bereavement time off when his mother passed in May of 2015." (FAC ¶ 57.)

Defendants' Retaliatory Conduct

Plaintiff alleges that after he complained about Defendant Haggag's conduct, "Defendant's work environment became increasingly hostile as Defendant Haggag began to retaliate against [Plaintiff]." (FAC ¶ 58.) For example, Defendant Haggag "stopped [Plaintiff] from working any evening shifts," which he used to work prior to complaining of Defendant Haggag's behavior, "forcing [Plaintiff] to work morning shifts starting around 6:00 AM that only lasted for one hour." (FAC ¶¶ 59-60.) Before Plaintiff complained, he was allowed to work "profitable evening shifts where he would stand to receive larger tips," but after complaining, Defendant Haggag "continued to show preferential [treatment] to fellow Muslim and Pakistani banquet servers and would not give any evening shifts to [Plaintiff] in retaliation for his complaints of discrimination and because he is Asian/Indian Hindu." (FAC ¶¶ 61-62.) On another occasion, on December 12, 2017, "Defendant Haggag began throwing food and condiments on the ground in the section that [Plaintiff] had been assigned for the day in front of other banquet servers and guests." (FAC ¶ 65.)

On or about January 18, 2018, Defendants "forc[ed]" Plaintiff to "work an event that included over 100 people with help from only one other person." (FAC ¶ 68.) Plaintiff alleges that "[w]orking this event with such little help caused [his] blood sugar to raise to…a dangerous level…as well as stress and physical strain." (FAC ¶ 69.)

On or around January 25, 2018, Plaintiff sent an email to Defendant Bonnet "alleging that although he had been approved to take two weeks off, Defendant Haggag continuously called and harassed him stating 'You were supposed to work today, are you on the way?'" (FAC ¶ 74.)

<u>Plaintiff's Further Complaints regarding Defendants' Retaliatory Conduct</u>

On November 18, 2017 and December 13, 2017, Plaintiff sent Defendant Bonnet additional emails regarding "Defendant Haggag's discriminatory and retaliatory conduct," but "no action was taken." (FAC ¶¶ 63-64, 66.)

In January 2018,[4] Plaintiff sent a letter to EEOC investigator Dolanda Young alleging that "despite making multiple complaints, nothing had been done by Human Resources to remedy the matter." (FAC ¶ 67.) He also informed EEOC Investigator Young "around this time" about the "incident regarding his diabetic scare." (FAC ¶ 72.)

Plaintiff allegedly submitted further complaints to Defendants "about his diabetic needs" and "specifically complained how Defendant Haggag intentionally changed his duties and was making his work more difficult," but "no action was taken by Human Resources to remedy the matter." (FAC ¶¶ 70-71, 73.) Plaintiff also alleges that he complained to Defendants "about the material change in his hours." (FAC ¶ 77.)

Plaintiff alleges that the above-stated incidents are "just some examples of unlawful discrimination and retaliation" he experienced. (FAC ¶ 94.) Indeed, Plaintiff claims "a continuous practice of discrimination" and "continuing violations" due to Plaintiff's "religion, race, national origin, and disability, and because he complained or opposed the unlawful conduct of Defendants related to the above protected classes." (FAC ¶¶ 95-96.) Plaintiff alleges that "at all material times," Defendants failed to discuss or make accommodations for his religious observances and disability of diabetes, even though doing so "would not cause an undue hardship on Defendant's operation of its business." (FAC ¶¶ 97-102.)

---

[4] Plaintiff does not specify the exact date.

Plaintiff points to a number of negative impacts he experienced as a result of the alleged discrimination and retaliation. Plaintiff "felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed" and "suffered and continues to suffer severe emotional distress and physical ailments." (FAC ¶¶ 105-06.) Additionally, Plaintiff "has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails. [Plaintiff] has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of employment of life, and other pecuniary losses." (FAC ¶ 107.)

## DISCUSSION

### I.    Rule 12(b)(6) Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair

understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" Id. at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

II.     *The Parties' Arguments*

Plaintiff sets forth seven causes of action in his Amended Complaint, as follows: (1) discrimination in violation of the ADA against Defendant MM Hotel; (2) retaliation in violation of the ADA against Defendant MM Hotel; (3) discrimination in violation of 42 U.S.C. § 1981 against all defendants; (4) discrimination under Title VII against Defendant MM Hotel; (5) retaliation under Title VII against Defendant MM Hotel; (6) discrimination under New York State law against all defendants; (7) retaliation under New York State law against all defendants; and (8) aiding and abetting under New York State law against all defendants.

In their motion to dismiss, Defendants argue that Plaintiff's claims should be dismissed because Plaintiff "fails to connect any purported adverse employment action to any protected

characteristic or complaint of discrimination." (Defs.' Mem. In. Supp. [ECF No. 33] at 1.) Defendants also argue that many of Plaintiff's allegations are time-barred. Plaintiff's opposition, which is less than 10 pages, fails to address many of Defendants' arguments.

### III.  *Claims that Plaintiff has Abandoned*

As Defendants point out, there are a number of claims that Plaintiff does not address in his opposition brief. "It is well-settled that failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims." *Ross v. Port Chester Housing Authority*, 2019 WL 4738941, at * (S.D.N.Y. Sep. 27, 2019) (collecting cases). Plaintiff does not address the following claims in his opposition papers: disability discrimination under the ADA and NYSHRL (first and sixth causes of action); retaliation under the ADA and NYSHRL related to disability (second and seventh causes of action); and aiding and abetting under the NYSHRL (eighth cause of action). Indeed, Plaintiff concludes his opposition by stating that he has "pled facts [sufficient] to sustain a cause of action for § 1981, Hostile Work Environment, Retaliation under Title VII and NYSHRL, and Failure to Accommodate under Title VII and NYSHRL."  (Pl.'s Opp. [ECF No. 34] at IV[5].) Plaintiff makes no reference to his other claims, viz. disability discrimination under the ADA and NYSHRL, retaliation under the ADA and NYSHRL related to disability, and aiding and abetting under the NYSHRL. Accordingly, Plaintiff is deemed to have abandoned those claims and they are dismissed.

---

[5] Plaintiff did not include page or paragraph numbers in his Opposition. Accordingly, the Court refers to the section numbers.

IV.    Title VII and NYSHRL Claims

    a.  Statute of Limitations

As an initial matter, the parties dispute whether Plaintiff's discrimination, hostile work environment, and retaliations claims are time-barred and, relatedly, whether the conduct Plaintiff complains of constitutes a continuing violation.

Before filing a Title VII claim in a federal court, a plaintiff must first file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice or, if the claimant initially instituted proceedings with a state or local equal employment agency, within 300 days of the alleged unlawful employment practice. *See 42 U.S.C. § 2000e-5(e)*; *Hewitt v. New York City Dep't of Health and Mental Hygiene*, 535 F. App'x 44, 45 (2d Cir. 2013). "In states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the [Equal Employment Opportunity Commission] is 300 days." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010) (internal quotations and citations omitted). Title VII's statutory requirement for filing with the EEOC "is analogous to a statute of limitation." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996). The statute of limitations for NYSHRL claims is three years. *Kassner v. 2nd Ave. Deli.*, *Inc.*, 496 F.3d 229, 238 (2d Cir. 2007).

Despite the conflicting dates as to when Plaintiff filed his filed his complaint with the EEOC, the Court will assume it was initially filed on March 22, 2017 given that that is the earlier of the two dates he presents. (FAC ¶ 5.) Thus, this Court will only consider those "discrete" acts that occurred after May 27, 2016, 300 days prior to March 22, 2017, for purposes of Plaintiff's Title VII claims, and after July 18, 2015 for his NYSHRL claims. Nonetheless, the Court can

consider "prior acts as background evidence in support of a timely claim." *Nat'l R.R. Pass. Corp.*

*v. Morgan*, 536 U.S. 101, 113 (2002); *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) ("the proper

focus is on the time of the discriminatory act" where the alleged injury is discrimination). With

respect to Plaintiff's hostile work environment allegations, however, as long as "an act

contributing to the claim occurs within the filing period," this Court can consider "the entire time

period of the hostile environment," even if some of the component acts fall outside the statutory

time period. *Nat'l R.R. Pass. Corp.*, 536 U.S. at 117. The Court will now address Plaintiff's

hostile work environment and discrimination claims.

      *b.   Hostile Work Environment*

Plaintiff alleges that Defendants discriminated against him "on the basis of his race,

national origin, and religion together with causing a hostile work environment based on the

same." (FAC ¶ 127.) Though Plaintiff claims discrimination under Title VII and NYSHRL and

not specifically hostile work environment, he appears to allege that he was subjected to a hostile

work environment, rather than discrete acts of discrimination.[6] Accordingly, this Court analyzes

Plaintiff's discrimination claims under the hostile work environment framework. Because these

claims are analyzed the same under NYSHRL as under Title VII, the Court considers them

together. *See Thomson v. Odyssey House*, 2015 U.S. Dist. LEXIS 125887, at *40 (E.D.N.Y.

Sep. 21, 2015).[7]

---

[6] The Court draws this conclusion from Plaintiff's failure to point to specific discrete acts in his Amended Complaint and his argument in his opposition papers, which discusses a hostile work environment under the heading of "Plaintiff States a Claim for Discrimination and Hostile Work Environment on the Basis of his Religion, National Origin, and Race." Discrete acts include, for example, "termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Pass. Corp.*, 536 U.S. at 114.

[7] The Court notes that recent amendments to the NYSHRL signed into law on August 12, 2019, which among other things eliminate the severe and pervasive standard for hostile work environment claims as well as the *Faragher-Ellerth* defense, do not apply retroactively.

To establish a hostile work environment claim under Title VII, "a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015) (internal quotations and citations omitted). The hostility of a work environment should be assessed based on the "totality of the circumstances." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "Factors that a court might consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Id.* "The Second Circuit 'treats the first two of these factors—the frequency and the severity of the misconduct—as the principal focus of the analysis.'" *Olivier v. Cty. of Rockland*, 2018 WL 401187, at *5 (S.D.N.Y. Jan. 11, 2018) (citing *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009)).

The alleged hostility began when Defendant MM Hotels hired Defendant Haggag as Plaintiff's supervisor in 2003. Though Plaintiff does not delineate which allegations in his complaint pertain to his hostile work environment claim, Plaintiff points to five "examples" of discriminatory comments Defendant Haggag made in the 15-year period between Defendant Haggag's hiring and Plaintiff filing this action. (FAC ¶¶ 40-41.) Plaintiff also alleges that Defendant Haggag denied his requests for time off in October 2003 (FAC ¶ 35) and October 7, 2017 (FAC ¶ 51), and points to another incident in October 2017 when Defendant Haggag told Plaintiff's co-workers that he had "left early to protest someone else receiving a promotion over him" when in fact he left early "to care for his sick son." (FAC ¶¶ 49-50.) Plaintiff alleges that

on December 12, 2017, Defendant Haggag "began throwing food and condiments on the ground in the section that [Plaintiff] had been assigned for the day in front of other banquet servers and guests." (FAC ¶ 65.) Finally, Plaintiff alleges that, in March 2018, Defendants Haggag and Bonnet asked him to trim his hair in violation of his religious beliefs. (FAC ¶¶ 78-93.) Plaintiff makes a number of other allegations that lack specific dates or details, such as "Defendant Haggag regularly made open and discriminatory comments about Asian/Indian people and Hindus within earshot of [Plaintiff] and other employees." (FAC ¶ 40.)

Of these potentially hostile acts, only those that pertain to a protected characteristic are relevant to this inquiry. *See Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 118 (2d Cir. 2010) (noting Plaintiff only put forth one incident motivated by race); *Olivier*, 2018 WL 401187, at * 5 (S.D.N.Y. 2018) (plaintiff "must show that the hostile conduct occurred because of a protected characteristic"). Additionally, allegations that Defendant Haggag "regularly" or "at all material times" made certain remarks are unhelpful in this context "because the precise frequency of such comments is of great importance in analyzing a hostile work environment claim." *Almontaser v. N.Y. City Dep't of Educ.*, 2014 U.S. Dist. LEXIS 92760, at *22-23 (E.D.N.Y. July 8, 2014).

After removing from the analysis those comments for which Plaintiff has not specified a date or which do not implicate any of his protected characteristics, what remains are the five remarks that Plaintiff provides as "examples" without any time frame and Defendants' request that Plaintiff trim his hair. Taken together, these six incidents over a fifteen-year period are not sufficiently frequent or severe enough to constitute a hostile work environment as a matter of law. *See Fleming*, 371 F. App'x at 118 ("racially harassing comment" followed by "numerous incidents of unfair treatment" did not constitute hostile work environment); *Schwapp v. Town of*

*Avon*, 118 F.3d 106, 110 (2d Cir. 1997) ("For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.") (internal quotations omitted). Given that none of the five examples of discriminatory comments were even specifically about Plaintiff, they cannot be said to be threatening or humiliating. With respect to the hair trimming situation, which will be discussed further below, Plaintiff fails to allege that Defendants' took any sort of action after he furnished the note from his priest, and in any event, is an isolated incident that does not rise to the level of a hostile work environment. Finally, Plaintiff has not alleged that the comments unreasonably interfered with his work performance. Thus, Plaintiff's claims for hostile work environment are dismissed.

### c. *Discrimination*

Given the lack of clarity in Plaintiff's papers, to the extent Plaintiff truly is alleging discrete acts of discrimination in addition to a hostile work environment, the Court will analyze any such possible claims. Disparate treatment claims under Title VII are subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1873). *Littlejohn*, 795 F.3d at 311. Because discrimination under the NYSHRL claims are analyzed under the same standard as Title VII claims, the Court considers them together. *Thomson*, 2015 U.S. Dist. LEXIS 125887, at * 43. Under *McDonnell Douglas*, a plaintiff makes out a *prima facie* discrimination case by showing 1) that he is a member of a protected class; 2) that he was qualified for employment in the position; 3) that he suffered an adverse employment action; and 4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation. *Littlejohn*, 795 F.3d at 311.

At the pleading stage, however, a plaintiff does not need to establish every element of the *McDonnell Douglas prima facie* case. *Id.*; *see also Doe v. Columbia Univ.*, 831 F.3d 46, 5 (2d Cir. 2016). Instead, at this stage, a plaintiff has a "minimal burden of alleging facts suggesting an inference of discriminatory motivation." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (internal quotation marks omitted). Thus, Title VII "requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." *Id.*; 42 U.S.C. § 2000e-2(a)(1).

With respect to the first element, a plaintiff must show that his employer took an adverse employment action against him. *Vega*, 801 F.3d at 85. An adverse employment action is one which causes a materially adverse change in the terms and conditions of employment. *Id.*; *Arroyo-Horne v. City of New York*, 2018 WL 4259866, at * 10 (E.D.N.Y. Sep. 5, 2018). Examples of materially adverse changes include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004).

With respect to the second element, "an action is 'because of' a plaintiff's race, color, religion, sex or national origin where it was a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action." *Vega*, 801 F.3d at 85.

Plaintiff has not alleged any specific adverse employment actions, and some of the potential adverse employment actions he refers to in his complaint do not have specific dates associated with them. From what the Court can glean from Plaintiff's papers, the one potential adverse employment action that Plaintiff experienced is not receiving a promotion in the 17 years

he has been employed with Defendants. Even with a generous reading of the Amended Complaint, the only other possible adverse employment actions that Plaintiff points to (that are not time-barred under either Title VII or the NYSHRL) are: 1) Defendant Haggag's statement to Plaintiff's co-workers that Plaintiff "left early to protest someone else receiving a promotion over him" when in fact he had left work early to care for his son (FAC ¶ 50); 2) Defendant Haggag's refusal of Plaintiff's request for time off on his son's birthday and subsequent lack of an assignment for Plaintiff on one of those days (FAC ¶¶ 51-53); and 3) Defendants Haggag and Bonnet's requests that Plaintiff trim his beard hair and that he not return to work until he furnished a note from his priest explaining the religious purpose for maintaining his beard (FAC ¶¶ 78-93.).

None of these actions constitutes an adverse employment action. With respect to not being promoted, Plaintiff has failed to allege a specific promotion he applied for, or a date on which he applied, and that he was refused any such promotion. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) (a plaintiff is required to allege that "she or he applied for a specific position or positions and was rejected therefrom.") With respect to the other three possible adverse employment actions that Plaintiff may have suffered, none rise to the level of constituting a materially adverse change in the terms and conditions of employment. *Vega*, 801 F.3d at 85

### d. Retaliation

Retaliation claims under Title VII are also analyzed pursuant to the *McDonnell Douglas* burden-shifting evidentiary framework, as are retaliation claims under the NYSHRL. *Littlejohn*, 795 F.3d at 315; *Thomson, 2015 U.S. Dist. LEXIS 125887, at *58*. "To establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that

shows '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 315-16 (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). These requirements are also relaxed at the pleading stage. To survive a motion to dismiss, a plaintiff "must plausibly allege that (1) [the] defendants discriminated – or took an adverse employment action – against him, (2) 'because' he has opposed any unlawful employment practice." *Arroyo-Horne*, 2018 WL 4259866, at * 16 (quoting *Vega*, 801 F.3d at 90).

There appears to be no dispute that Plaintiff filed several complaints, both with the EEOC and with Defendants, about the alleged discrimination he experienced while employed by Defendant MM Hotel. Nonetheless, Defendants argue that Plaintiff did not engage in a protected activity because "he did not allege any facts to indicate that he linked any of his protected characteristics to Mr. Haggag's purported harassment based on a protected characteristic." (Defs.' Mem. In Reply [DE 35] at 8) (internal quotations omitted).

"To qualify as protected activity, a plaintiff must clarify to the employer that he is complaining of unfair treatment *due to his membership in a protected class* and that he is not complaining merely of unfair treatment generally." *Sletten v. LiquidHub, Inc.*, 2014 U.S. Dist. LEXIS 94697, at *14 (S.D.N.Y. July 10, 2014) (internal quotations and citations omitted) (emphasis in *Sletten*). Though Plaintiff's papers are not a model of clarity and often lack specificity, Plaintiff has alleged that he complained to Defendants about "Defendant Haggag's discriminatory religious comments and behavior," (FAC ¶ 38), Defendants' alleged preferential treatment of Muslim and Pakistani banquet servers (FAC ¶ 45), and Defendant Haggag's "discriminatory comments and conduct" (FAC ¶¶ 56-58.) The sticking point for Plaintiff will be

whether he suffered an adverse employment action and whether any such adverse employment action was "because" Plaintiff opposed Defendants' employment practices. *See Arroyo-Horne*, 2018 WL 4259866, at * 16.

"The standard for an adverse employment action in retaliation claims is considerably broader than the standard for discrimination claims under Title VII." *Jaeger v. North Babylon Union Free School Dist.*, 191 F. Supp. 3d 215, 234 (E.D.N.Y. 2016) (internal quotations and citations omitted). For a retaliation claim, an adverse employment action is one that a reasonable employee would find to be "materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotations omitted).

Plaintiff alleges that Defendants retaliated against him in January 2018 by "limiting [Plaintiff's] shifts to mostly early morning coffee duties…that paid less than evening shifts," (FAC ¶¶ 59-62, 76; Pl.'s Opp. [ECF No. 34] at iii), and on January 18, 2018 "by forcing [Plaintiff] to work an event that included over 100 people with help from only one other person" (FAC ¶ 68). Having to work a large event with little support, while frustrating, is not an adverse employment action, however losing out on "larger tips" associated with the evening shifts could certainly be an adverse employment action. *See Pape v. Dircksen & Talleyrand Inc.*, 2019 WL 1435882, at *13 (E.D.N.Y. Feb. 1, 2019) ("The change in shift from bartender to server could constitute an adverse action because it deprived [plaintiff] of an opportunity for advancement and more tips."), *report and recommendation adopted*, 2019 WL 1441125 (E.D.N.Y. Mar. 31, 2019).

The question is now whether this adverse employment action was "because" of Plaintiff's complaints. *Arroyo-Horne*, 2018 WL 4259866, at * 16. Proof of a causal connection "can be

shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. Of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Here, the alleged retaliatory conduct occurred in January 2018. Plaintiff's initial EEOC charge was submitted on March 22, 2017, however Plaintiff also submitted multiple intervening complaints to Defendant Bonnet within the three months preceding the alleged retaliatory conduct on October 30, 2017, November 18, 2017, and December 13, 2017. (FAC ¶¶ 5, 56, 63, 66). Thus, a temporal relationship could be established between Plaintiff's complaints and the retaliatory conduct. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (five months is not too long to find causal relationship). Accordingly, Defendants' motion to dismiss is denied with respect to Plaintiff's Title VII retaliation claim.

### e. *Failure to Accommodate Religious Belief*

As Defendants point out, Plaintiff did not specifically delineate a cause of action for failure to accommodate religious beliefs, but Plaintiff seems to allege such a claim within the "Material Facts" section of his Amended Complaint. Plaintiff alleges that "Defendants failed to discuss or make reasonable adjustments to the work environment that would allow [him] to practice his religious beliefs," i.e., maintaining his hair length contrary to Defendant's request that he trim his hair. (FAC ¶¶ 78-93, 97-99.)

To make out a prima facie case of religious discrimination, a plaintiff must show that "(1) [he] held a bona fide religious belief conflicting with an employment requirement; (2) [he] informed [his] employers of this belief; and (3) [he was] disciplined for failure to comply with

the conflicting employment requirement." *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) (internal quotation marks and citations omitted). Plaintiff appears to have held a bona fide religious belief regarding his hair, and he informed his employer about this belief. Nonetheless, Plaintiff's claim fails because he does not allege that he was disciplined for failure to trim his hair. Plaintiff reorders the sequence of events in his opposition papers to make it seem as though Defendant Bonnet "then prohibited Plaintiff from returning to work until he cut his hair" after furnishing a letter from his priest. (Pl.'s Opp. [ECF No. 34] at iv.) This differs from the allegations in the Amended Complaint, which state that on March 30, 2018, Defendant Bonnet instructed Plaintiff not to return to work until he cut his hair, before Plaintiff provided the note from his priest on April 4, 2018. (FAC ¶¶ 91, 92.) Given that "[t]he process of finding a reasonable accommodation is intended to be an interactive process in which both the employer and employee participate," *see Elmenayer v. ABF Freight Sys.*, 2001 U.S. Dist. LEXIS 15357, at *16-17 (E.D.N.Y. Sep. 20, 2001), Defendant Bonnet was within reason to request a note from Plaintiff's priest explaining his religious practice. Once Plaintiff provided the note from his priest explaining his religious practice, the story seems to end – there is no further allegation that Defendant Bonnet rejected the note from Plaintiff's priest in any way or that she even made any further comments to Plaintiff on the subject of his hair after receiving the note. Thus, Defendants' motion to dismiss Plaintiff's claim regarding failure to accommodate religious belief is granted.

V.     *Section 1981*

To state a claim under Section 1981, a plaintiff must allege that "(1) [he] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute."

*Mobil Gas Station*, 599 F. App'x 395, 396 (2d Cir. 2015) (quoting *Mian v. Donaldson, Lufkin &*

*Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)). Section 1981 "at a minimum reaches

discrimination directed against an individual because he or she is genetically part of an ethnically

and physiognomically distinctive sub-grouping of *homo sapiens*." *Saint Francis Coll. v. Al-*

*Khazraji*, 481 U.S. 604, 607 (1987) (internal quotations and citations omitted). Section 1981,

however, does not prohibit discrimination on the basis of religion, *see Runyon v. McCrary*, 427

U.S. 160, 167 (1976), or national origin, *see Village of Freeport v. Barrella*, 814 F.3d 594, 606

(2d Cir. 2016).

Despite pleading in his Amended Complaint that the discrimination he faced was based

on his national origin and religion ("because nationality and religious differences between

Hindus from India and neighboring Pakistani Muslims—is a source of well documented and

ongoing conflict." (FAC ¶ 31)), Plaintiff attempts to associate his religion (Hinduism) with his

ethnicity in his Opposition brief, saying that religion is an "ethnic characteristic of his race as

defined by the *Saint Francis* Court." (Pl.'s Opp. [ECF No. 34] at i.) However, the *Saint Francis*

Court does not include religion in its discussion of ethnic/racial characteristics. *Saint Francis*

*Coll.* 481 U.S. at 613 ("If respondent on remand can prove that he was subjected to intentional

discrimination based on the fact that *he was born an Arab, rather than solely on the place or*

*nation of his origin, or his religion*, he will have made out a case under § 1981.") (emphasis

added). Thus, the Court rejects the notion that Plaintiff's religion is a part of his "race and

ethnicity under § 1981."

Plaintiff points to historical tensions between India and Pakistan, and notes that his

comparators were Pakistani and Muslim. Thus, Plaintiff is clearly noting discrimination on the

basis of national origin and religion, rather than ethnicity or race. Because Section 1981 does not

protect against national origin or religious discrimination, Plaintiff's claim of discrimination under Section 1981 fails.

*VI.    Leave to Amend*

Plaintiff includes a single line in his opposition requesting leave to amend. Plaintiff does not provide any argument or explanation as to why leave to amend should be granted. Nonetheless, given the liberality afforded to applications to amend, viewed in conjunction with the allegations Plaintiff has presented thus far, Plaintiff's application is granted, but solely with respect to his hostile work environment and discrimination claims. Plaintiff's request for leave to amend is denied as to his other remaining claims, i.e. those claims he abandoned as described above and his Section 1981 claim. Plaintiff has until December 9, 2019 to amend his hostile work environment and discrimination claims.

## CONCLUSION

For the foregoing reasons, Defendants' Rule 12(b)(6) motion to dismiss is denied with respect to Plaintiff's retaliation claims under Title VII and NYSHRL.[8] Defendants' motion to dismiss Plaintiff's claims for disability discrimination under the ADA and NYSHRL, retaliation under the ADA and NYSHRL related to disability, aiding and abetting under the NYSHRL, and discrimination under Section 1981 is granted. Defendants' motion to dismiss Plaintiff's hostile work environment and discrimination claims under Title VII and NYSHRL is granted, unless Plaintiff amends his complaint by December 9, 2019.

**SO ORDERED.**

Dated: Central Islip, New York  
      November 18, 2019

   s/ Denis R. Hurley  
Denis R. Hurley  
United States District Judge

---

[8] Defendants' argument that this Court should decline to exercise supplemental jurisdiction over the state law claims is rendered moot given that Plaintiff's Title VII retaliation claim stands.